LUKE LOTT, PLAINTIFF IN ERROR, v. BANKS MEACHAM, EXECU-
TOR OF JONATHAN THOMAS, DEFENDANT IN ERROR.

An estate in remainder may be limited after a life estate in personal property by
will, and effect should be given to the intention whenever it is manifest that
such estate was designed to be created.

The legal estate in a chattel bequeathed by will remains in the executor until he
assents to the legacy ; and when there is an estate in remainder created by
the will, the assent to the estate for life will enure to the benefit of the re-
mainder-man.

T. bequeathed the whole of his personal estate to his wife for life, and directed that
at her death the whole of his property, real and personal, should be sold and
equally divided between his six children :—Held, that it was clearly the in-
tention of the testator that his children should not take the property *in specie*,
but that the title to the property, on the expiration of the life estate, vested
in the executor, as remainder-man, in trust, to be sold by him for the benefit
of the children ; and the exercise of the power of sale in such a case, unless
otherwise directed, belongs to the executor exclusively, *virtute officii.*

When there is a trust reposed in an executor, and a power of sale coupled with
it in order to execute the trust, it is not competent to the Court of Probate to
discharge the executor until it appear that he has performed the duty.

Banks Meacham, executor of Jonathan Thomas, brought
an action of *replevin* against the plaintiff in error, in the
Circuit Court of Gadsden County, for the recovery of cer-
tain slaves, alleged to be the property of the plaintiff as ex-
ecutor.

The defendant pleaded not guilty—*ne unques* executor, and
that the goods and chattels in the declaration mentioned
were the property of him, the said defendant, and not of the
plaintiff.

At the trial of the cause in the Circuit Court, before the
Hon. THOMAS BALTZELL, Judge of the Middle Circuit, at the
Spring term, 1848, the plaintiff, to prove and maintain the
issue joined, offered in evidence a certified copy of the will

of Jonathan Thomas, and the following clause, relating to the property in dispute, was read to the jury, viz :

" Item.   I lend to my beloved wife, Mary Thomas, for her own use, support and maintenance during her widowhood, the following property, viz : the tract of land whereon I now live, eight negroes, Old Will, Chloe, Tom, Mary, James, Patsey, Ben and Rachael, together with one horse, four mules, all the balance of my stock of cattle, hogs, goods, &c., with all my household and kitchen furniture and farming utensils of every article and kind ; to have and to hold all and singular the above mentioned property, for and during her single state, or widowhood, and no longer.   And in the event of her marrying, I will and order that my executors take charge of the above mentioned property, so as to handsomely support and maintain her, my beloved wife, for and during the whole remaining part of her life ; and at her death, I further will and order that the whole of the above property be sold, and equally divided between my six children here below named, viz : Elizabeth McCall, John F. O. Thomas, Micajah Thomas, Joseph Thomas, Ann Mariah Thomas and Susan C. Thomas, their heirs or assigns forever."

The said plaintiff further proved that he was named executor in said will, and that, on the 13th February, 1832, he made probate thereof in the County Court, and letters testamentary thereon were issued to him in due form of law. He also proved that he, as executor, delivered the possession of the property in said devise and bequest specified, to Mary Thomas, the devisee and legatee of the life estate given therein, which was by her held to the period of her death ; that said Mary did not intermarry after the death of the said testator, and that, after the death of the said Mary Thoms, the said property was taken possession of by the persons named in said will to take the proceeds of the same after her death, and that, by amicable agree-

19

ment among themselves, they distributed and divided the said property. He also proved that the property taken from the defendant by the writ of *replevin* here, was of the said property, so delivered by the said plaintiff to the said Mary Thomas, under said will.

The plaintiff then introduced and read in evidence an order and decree of the County Court of Gadsden County, made July 16th, 1836, discharging him, the said plaintiff, from the executorship, according to the statute in such case made and provided, " excepting that with regard to the property bequeathed to Mary Thomas, and which, upon her marriage, is to be taken charge of by said executor, and upon her death, to be sold by him and divided," as provided in the will, he was, by said order and decree of the County Court, required fully to execute and perform said duty, on the occurrence of either of said events.

On the part of the defendant, it was proved that he had, before the institution of the suit, intermarried with Ann Mariah Thomas, one of the persons named in said clause of said will, and that he was in possession of the slaves in dispute, with the consent and concurrence of all the persons so named. This being all the testimony offered, and the case closed as to the evidence, the following instruction was given by the Court to the jury, to wit :

The Court instructs the jury that the plaintiff, as the executor of Jonathan Thomas, on the death of the widow, is entitled to the possession of the property devised to her, to administer the same, according to law, and the directions of the will—the Court stating at the same time, that, unless there were debts of the estate to pay, or some cause of interference by the executor, it was not disposed to allow an amicable division made by the heirs to be disturbed.

And the defendant prayed the Court to instruct the jury as follows, viz :

1. That the devise and bequest in the will of Jonathan

Thomas of the property in dispute, created an estate in remainder in the persons appointed to take, after the death of Mrs. Mary Thomas, the tenant for life, and that this estate in remainder was created at the same time with the creation of the particular, or life estate.

2. That the assent of the executor to the bequest, by the delivery of the property in dispute to Mary Thomas, the tenant of the particular estate, is an assent to the remainder granted to the persons named to take in remainder, and having so assented, he cannot now retract that assent.

3. That the property in dispute, being in the possession of the defendant, as one of the persons entitled to take in remainder, in virtue of his marital rights, he was entitled to that possession, as against the plaintiff in this action.

4. That the plaintiff having, by his own showing, been fully discharged by the County Court of Gadsden County, from all the duties of such executor, on the 16th July, 1836, cannot now maintain this action;

Which said instructions, so prayed by the defendant, the said judge refused to give to the jury, and the jury found for the plaintiff.

And the said defendant by his counsel, to the instructions so given by the said judge to the jury, and to the refusal of the Court to instruct the jury as prayed, excepted.

The plaintiff in error, by his counsel, assigned the following errors, viz :

First. The Court erred in the instructions given to the jury.

Second. The Court erred in the refusal to instruct the jury, as prayed by plaintiff in error.

Hon. GEORGE S. HAWKINS, Judge of the Western Circuit, sat in the place of Justice THOMPSON, who had been of counsel in the Court below.

*Dupont* & *Maxwell*, for Plaintiff in Error.

*Davis*, for Defendant in Error.

SEMMES, *Justice,* delivered the opinion of the Court:

This was an action in *replevin,* brought in the Court below by respondent, executor of Jonathan Thomas, deceased, against appellant, for the recovery of certain negro slaves.

The appellant claims the property in right of his wife, formerly Ann Mariah Thomas, one of the legatees under the will of the testator, bearing date the 16th of April, 1830.

The respective rights of the parties to this suit depend upon the construction to be given that portion of the will which bequeathes the property in controversy, with other slaves, to the widow during her life, and the proceeds of it, after her death, to the children of the testator.

It is contended by counsel for appellant : 1. That the devise and bequest, in the will, of the property in dispute, created an estate in remainder in the persons appointed to take after the death of the widow, the tenant for life ; and that this estate in remainder was created at the same time with the creation of the life estate. 2. That the assent of the executor to the bequest, by the delivery of the property in dispute to Mary Thomas, the tenant for life, is an assent to the remainder granted to the persons named to take in remainder, and having so assented, he cannot now retract that assent. 3. That the property in dispute being in possession of the defendant, as one of the persons entitled to take in remainder in virtue of his marital rights, he was entitled to that possession as against the plaintiff in this action. And 4. That the plaintiff, having been fully discharged by the County Court of Gadsden County from all the duties of such executor, on the 16th of July, 1836, cannot now maintain this action.

Whatever may have been the rule at common law, the principle is now well settled that an estate in remainder may be limited after a life estate in personal property, and the courts will sustain and give effect to the intention, whenever it is manifest from the will that such estate was

designed to be created.   6 Peters' Reports, 68.   13 Pickering's Reports, 330.

It cannot be doubted that, if the will of Jonathan Thomas created an estate in remainder in his children to the property in dispute, to take effect on the death of Mary Thomas, the tenant for life, the plaintiff in *replevin*, not having the right of possession, could not recover under the proofs in this case.   The whole merit in the controversy is embraced in this point, and to its consideration the attention of the Court has been mainly directed.

That an estate in remainder was created under the will, to take effect on the termination of the life estate and for the benefit of the children of the testator, cannot be questioned.   But in whom did this estate in remainder vest ?— Was it in the children, directly, or the executor in trust for these beneficiaries ?

On the death of the testator, the title to his whole personal estate vested under the will, in *autre droit*, in the executor ; and this interest can only be divested by the act of the executor, or by operation of law.

The tenant for life, although having an inchoate right to this property under the devise in her favor, could not take possession of it and thereby acquire the title, without the assent of the executor ; and so well settled is this principle that the legal estate in a chattel bequeathed by will remains in the executor until he assents to the legacy, that, before such assent, he may maintain *trover* or *detinue* for the recovery of the property from the possession of even the legatee ; though the latter acquired that possession under the sanction and direction of the will itself.   And this right and control in the executor, over the entire personal estate of his testator is for his protection, and results from his liability to creditors.   2 Williams on Executors.   The assent to a legacy being once given, being evidence of assets in the hands of the executor, cannot, as a general proposition,

be retracted. The specific legatee acquires the right of possession to the legacy, subject to such restrictions and conditions as are imposed by the will; and it is equally true, as is contended, that, whenever an estate in remainder is created under a will, the assent on the part of the executor to the estate for life will enure to the benefit of the remainder-man. The title vests in the latter immediately on the termination of the first estate, and he may maintain *trover* and recover, even against the executor. 5 Term Reports, 374. 6 Iredell's Reports, 88. 3 East, 120.

In this case the executor of Thomas, having delivered the property into the possession of the life tenant, the assent on his part was express, and she thereby became vested with the title to the life estate. Had the bequest been limited to the words "I lend to my wife for her use," &c., there would have been force in the argument of counsel for respondent, that the use and enjoyment of the property by the tenant for life did not divest the executor of the title, but that it remained in him, as trustee. But the direction of the will that she should "have all and singular the said property for and during her single state," is a sufficient indication that it was the intention of the testator that the title to the property should pass and remain in his wife during her widowhood. Had she afterwards maried, (an event contemplated in the will,) she was to be divested of the possession and that, with the right of possession, was to revert back to the executor. But whether this event happened or not, it could not affect the estate in remainder after the termination of the life interest. The words of the will are, that, on the death of the widow, "I further will and order that the "whole of said property *be sold* and equally divided between "my children," &c. The import of these words is too plain to be misunderstood ; and it is manifest that it was not designed by the testator that his children should take the property *in specie*, but the *proceeds* of it *when sold*. This is not

only a legitimate, but the only sensible and consistent interpretation which can be given the words of this will ; and it follows that, by the terms of this bequest, the title to this property, on the expiration of the life estate, vested in the executor, he being the remainder man—holding the property, it is true, in trust, to be sold by him for the benefit of his children. But it is said this power of sale is not vested in the executor or any one by name. The power is an incident to the office of executor, and its exercise, unless otherwise directed, belongs exclusively to him, *virtute officii.*

If a testator directs any part of his estate to be sold, without making a trustee of the power, it naturally and by implication devolves on the executor. See 2d Johnson's Chancery Reports, 20, 254. 3d Atkinson, 714. This power of sale would, of necessity, imply that the title to the property was in the executor—the title is indispensable to the exercise of the power. But under the will, it is not a mere naked power to sell which is vested in the executor, but a power coupled with a trust. The legatees have a title, at least in equity, to the proceeds of the sale when realized, though no title in law to the specific property. The power to sell reposes a personal trust, which cannot be delegated.

Where the terms of a will create a trust in personal property, and no one is appointed to execute it, the executor becomes the trustee. 2d Story's Equity, § 976. 13 Pickering's Reports, 330.

In this case, the executor is bound to carry out the trust by a sale of the property and a distribution, as directed by the will. Any material deviation will render the exercise of his power void. Where the power and the trust are blended as here, and the latter can only be executed by an exercise of the former, the power is imperative, and equity will compel a sale, and an execution of the trust. See 1st W. Black., 162.

The entire argument of counsel for appellant is based

upon an assumed state of facts, (and which are contradicted by the terms of this bequest,) that the children were to take the *specific* property embraced in the devise to the life tenant. If this were true, there could be no question but that they would take the estate in remainder, and that the title to it would vest in them immediately on the death of the widow; and this absolute property in the specific chattel would negative all idea of a trust being created or contemplated by the testator. But here the children were not to take the property, nor was it to be *divided*, as in the authorities referred to by counsel, but it was directed to be *sold*, and the *proceeds* divided among them.

In the event that the widow had married, the property would have passed to the executor, and been held by him in trust. Would his right to the possession have terminated on her death? or could these legatees have recovered that possession by an action at law, or suit in chancery? Manifestly not. If the life tenant had disposed of her estate, and delivered possession of the property to the purchaser, the right of action, on the termination of the life estate, for the recovery of the property, would have been in the executor, and not in the legatees.

But it is said the object and purpose of the testator has been as effectually accomplished by the legatees dividing this property, as could be done by a sale by the executor, and a distribution of the proceeds. This may be true, but it does not invest this Court with the power of giving a different direction to the property from that the testator designed.

The great rule in the exposition of wills is, that the intention of the testator, as expressed in his will, shall prevail. 1st Blackstone's Reports, 672. And if he has directed a particular mode as to the disposition of his property, and it can be accomplished without violating any legal principle, it is not the province of the Courts to make a

new will for the testator, but to carry out the one he has made for himself.

It is contended by counsel for appellant, that the respondent was discharged from his office of executor, and that he cannot, therefore, maintain this suit. Had the order of the Court of Probate referred to, been designed to operate as a final discharge, it could not have the effect intended. It is not competent for the Probate Court to discharge an executor on his application, unless he has fully administered, or in the words of the statute, unless it appear he has faithfully discharged the trust reposed in him. Thompson, 211. It is not pretended that the administration of this estate was completed; but, on the contrary, independent of the subject-matter of this suit, the order of the Court of Probate itself affords conclusive evidence that the executor had not fully discharged the trust confided to him under the will. But the order was not designed as a final discharge—the sale of this property, and a distribution of it under the will, were expressly excepted, and the executor was required to perform these duties, and make his return according to law. If the proceedings before the Court of Probate, on the 16th of July, 1836, are to be regarded in the light of an annual or partial settlement on the part of the executor, they, doubtless, for that purpose, would be valid; but if they are to operate as a partial *discharge* in the strict sense of that term, the order itself is a nullity.

It is further insisted by appellant's counsel, that, if the respondent is considered in the character of trustee, as to the sale and distribution of this property, he cannot recover in this suit as executor. The Court cannot appreciate the force of this argument. It was not necessary that the respondent should have used his title as executor in the suit for the recovery of this property—it was a mere *descriptio personæ;* the legal title being in him, he could have recovered in his own right. 5th Cowper's Reports, 265. Inde-

20

pendent of this, although it is manifest that a trust is created as to this property, yet, in the opinion of the Court, the character of executor is not merged in that of trustee. As executor, the respondent holds the property in trust for the purposes contemplated in the will, and as such he is liable to the legatees.

In a case reported in 9th Pickering, 395, where a testator directed his executor to invest the residue of his personal estate in public funds, and apply the income thereof to the support, maintenance and education of his children during their minority, &c., it was held that, though a trust was created, it was incumbent on him *as executor* to discharge these duties, and failing to do so, he was liable on his administration bond. See, also, 4th Massachusetts Reports, 634. 6th Massachusetts Reports, 37. 3d Maddock's Reports, 73.

The Court, in the discharge of its duty, is compelled to sustain the judgment of the Court below; but, in view of the amicable division of this property by the legatees, it does not hesitate to say, that, upon a proper application to a Court of Chancery, full and adequate relief can be obtained.

Let the judgment below be affirmed.

[Judge HAWKINS dissented from the judgment of the Court, on the ground that defendant in error was, under the will, a trustee, and could not maintain the action, as executor.]